```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA

              CASE NO. 08-61916-CIV-ZLOCH
```

RANDON P. CAMPBELL,

     Plaintiff,

vs.                                         **O R D E R**

BROWARD SHERIFF'S OFFICE,

     Defendant.
_____/

    THIS MATTER is before the Court upon Defendant Broward Sheriff's Office's Motion For Summary Judgment (DE 62). The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises.

## I. Background

    Plaintiff Randon Campbell initiated the above-styled cause with the filing of a Complaint (DE 1) in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, alleging civil rights violations, pursuant to 42 U.S.C. § 1983. Defendant Broward Sheriff's Office ("BSO") then timely removed the action to this Court.

    The following facts, unless otherwise noted, are undisputed. From September, 2005, through on or about March, 2006, Plaintiff Randon Campbell was incarcerated as a pre-trial detainee at the Broward County Main Jail ("the Jail"), in Broward County, Florida. While an inmate at the Jail, Plaintiff Campbell routinely received medication he had been prescribed. Prescription and other

medications were administered each morning and each evening during what was referred to as "med-call." The medication was administered by the nursing staff of Armor Correctional Health Services, Inc., the contracted health services provider for Defendant Broward Sheriff's Office.

At or around 8:00 p.m. on December 1, 2005, an Armor nurse mistakenly administered Chlorpromazine, an anti-psychotic medication, to Plaintiff. Prior to ingesting the medication, Plaintiff questioned the nurse about it, advising her that he did not recognize this particular pill. She responded that the doctor had ordered it and that it was on Plaintiff's chart. After being shown the chart by the nurse, ostensibly confirming the medication had been ordered for him, Plaintiff ingested the Chlorpromazine. It came to be known at a later time that this medication had been prescribed for another inmate with the same last name, Sylborin Campbell, and was written on Plaintiff Randon Campbell's chart and administered to him in error.

The improper administration of Chlorpromazine to Plaintiff on the evening of December 1, 2005, caused him to develop a priapism, or persistent erection, which first appeared in the early morning hours of December 2, 2005, and lasted—by any account—at least five days. Plaintiff testified at his deposition that on the morning of December 2, 2005, he wrote a note to an Armor nurse advising her that he had an unwanted, undesired and painful

erection.  During the morning "med-call" that day, Plaintiff advised the guard that he had a note for the nurse.  When it was his turn to receive medication, he gave the note to the nurse.  She then went to the side where the guard was standing, read the note, and responded to Plaintiff first by laughing and then by telling him to "work it off."  According to Plaintiff, the guard standing next to her also laughed.

Plaintiff testified that each time he had contact with the BSO guards between December 2, 2005, and December 6, 2005, an estimated four contacts per day, he attempted to communicate with them about the priapism he was experiencing.  He kept his shirt untucked this entire span of time, in violation of prison policy, to conceal the erection from other inmates out of embarrassment.  Plaintiff testified that each of the numerous times he was questioned by the guards about his shirt being untucked, he advised them of his unwanted erection and lifted his shirt to show it to them, and that they took no responsive action, either medical or disciplinary.  He also testified that during this time his requests to be taken to the infirmary were denied, and that he was not given medical attention at the time he filled out and handed in a medical request form.  Plaintiff alleges he may have written as many as five notes to the nurses asking for help during this span of time, and that he was sometimes given pain medication such as Advil by the nurses in response to his notes.  Further, according to Plaintiff, at some

point during this period, a senior prison official came into his cell to conduct an inspection of the premises. Upon seeing the Plaintiff's untucked shirt, the official also questioned Plaintiff about it. Plaintiff advised the official that he had a problem and then he lifted up his shirt to show him. In response, Plaintiff testified that the official "looked at me and walked away." DE 38-1, p. 43.

Plaintiff testified that on December 6, 2005, his condition had deteriorated to the point that he could "barely walk." DE 38-1, p. 44. At the p.m. "med-call," Plaintiff alleges that he said to both the guard and the nurse something to the effect of: "I got to go, can somebody take me down. I have to, I can't take this no more. I have to go, please. Somebody take me there . . . I just can't take it." Id. Thereafter, he was transported to wait in the day room. Plaintiff saw the doctor at the prison that day around 9:30 p.m. or 10:00 p.m., who advised Plaintiff upon examining him that Plaintiff was going to the hospital. An ambulance arrived promptly and transported Plaintiff to the hospital. Plaintiff told both the doctor at the prison and the staff at the hospital that he had had the erection for five days at that point. Plaintiff was then admitted and underwent a series of procedures and surgeries at Broward General Medical Center. He was discharged from the hospital on December 15, 2005, and while the erection was eventually alleviated, Plaintiff alleges he has been rendered

4

permanently impotent.

In the sole remaining Count of his Complaint (DE 1), Plaintiff Campbell asserts a claim pursuant to 42 U.S.C. § 1983 against Defendant Broward Sheriff's Office alleging that the agency violated his constitutional rights by denying him access to medical care. Defendant denies this allegation and states that it is entitled to summary judgment on this claim for various reasons.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation omitted). Indeed,

> the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should

>     be decided at trial.  Only when that burden has been met
>     does the burden shift to the non-moving party to
>     demonstrate that there is indeed a material issue of fact
>     that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Analysis

Section 1983 provides a civil cause of action for "a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing 42 U.S.C. § 1983).

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  As such, "deliberate indifference to a prisoner's serious illness or

6

injury states a cause of action under § 1983." Id. And where prison guards intentionally deny or delay access to medical care, deliberate indifference is manifest. Id.

Because he was a pre-trial detainee and not a prisoner during the events that form the basis of his claim, Plaintiff's medical treatment claim is properly brought under the Fourteenth Amendment, and not the Eighth Amendment. See Andujar v. Rodriquez, 486 F.3d 1199, 1203 n. 3 (11th Cir. 2007). However, the Court notes that the deliberate indifference analysis is the same under either Amendment. Harris v. Coweta County, 21 F.3d 388, 393 n. 6 (11th Cir. 1994). Thus, precedent from Eighth Amendment cases and Fourteenth Amendment cases is applied interchangeably in the Eleventh Circuit. Lancaster v. Monroe County, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997).

To prevail on a deliberate indifference claim, a plaintiff must prove 1) an objectively serious medical need and 2) the subjective intent of deliberate indifference. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). A "serious medical need" is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008). Here, the Court finds Plaintiff has come forward with facts from which a jury could conclude that a serious medical need existed.

In establishing the second element, deliberate indifference to the serious medical need, the plaintiff must prove three facts: (1)

7

subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. Id. A defendant's response to the serious medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)(citation and quotations omitted).

Deliberate indifference is manifest not only where a defendant fails to provide medical care altogether, but also where there is excessive delay in providing medical care. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Several factors are to be considered when evaluating whether delay constitutes deliberate indifference. "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1189 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002). Accepting Plaintiff's version of events as true, the Court finds that it would be possible for a jury to conclude that Defendant acted with deliberate indifference in delaying Plaintiff's medical treatment.

Further, "[t]o state a claim under § 1983 against a private entity performing public functions, there must be a policy or

custom by which the constitutional deprivation was inflicted." German v. Broward Co. Sheriff's Office, 315 F.App'x. 773, 776 (11th Cir. 2009) (citing Buckner v. Toro, 116 F.3d 450, 452-53 (11th Cir. 1997)).  There is no respondeat superior liability under § 1983. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995).  The policy or custom need not receive formal agency approval.  Depew v. City of St. Marys, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986).  Indeed, it may include "'persistent and wide spread . . . practices,' 'permanent and well settled' practices and 'deeply embedded traditional ways of carrying out policy.'" Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985).  In other words, "a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."  Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991).  In order to establish such a policy or custom, a claimant must demonstrate a persistent and widespread practice as well as an entity's actual or constructive knowledge of such a policy or custom.  German, 315 F.App'x. at 776.  However, "normally random acts or isolated incidents are insufficient to establish a custom or policy."  Id. (citing Depew v. City of St. Marys, Ga., 787 F.2d 1496, 1499 (11th Cir.1986)).

Additionally, the custom or practice must be the "moving force behind the constitutional violation at issue," Prietro v. Metropolitan Dade County, 718 F. Supp 934, 938 (S.D. Fla. 1989) (quoting Samples v. City of Atlanta, 846 F.2d 1328, 1333 (11th Cir. 1988)), and there must be a causal link between the "custom or

9

policy and the deprivation." Fundiller, 777 F.2d at 1442. Thus, a party must assert a municipal custom or policy which is causally linked to the constitutional violation at issue.

Plaintiff does not allege a formal BSO policy caused the alleged violation of his constitutional rights. Rather, he alleges that the behavior of the guards during the five-day event and that of the agency following the event—taken as a whole—demonstrates an informal BSO policy or custom underlying the alleged constitutional violation. Police policy or custom can "be inferred circumstantially from conduct of the officers and of the policymaker." Grandstaff v. City of Borger, Tex. 767 F.2d 161, 171 (5th Cir. 1985).

While prior incidents of similar police conduct certainly tend to prove a pattern or custom on the part of the police force, the Fifth Circuit in Grandstaff aptly noted that a "plaintiff may encounter difficulties in making that proof, because of the lack of available credible witnesses and the avenues for dispute and distraction over the actual facts of each specific incident." Id. Plaintiff Randon Campbell has not produced any evidence of prior similar incidents here. But he has demonstrated by his deposition testimony some evidence of repeated, independent acts of alleged deliberate indifference by several officers, over the course of five days. According to Plaintiff, all of the guards with whom he interacted between December 2, 2005, and December 6, 2005, acted and responded to him in a similar fashion. And evidence of repeated acts, "by several officers in several episodes," can tend

to prove a disposition . . . "so prevalent as to be police policy or custom." Id.; see also Bordanaro v. McLeod, 871 F.2d 1141, 1156-57 (1st Cir. 1989).

The Court finds that the duration of this event, coupled with the alleged number of guards and interactions involved, raises a genuine issue of material fact which precludes the Court from finding as a matter of law that there was no underlying policy or custom on the part of BSO that caused the alleged constitutional violation.

Thus, after a careful review of the entire court record herein, the Court finds that genuine issues of fact remain to be tried by a jury. Reference by the Court to the aforementioned examples should not be construed to limit a subsequent trial to those issues alone.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Defendant Broward Sheriff's Office's Motion For Summary Judgment (DE 62) be and the same is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this   28th   day of March, 2011.

					_____
					WILLIAM J. ZLOCH
					United States District Judge

Copies furnished:

All Counsel of Record